Mr. Justice Clayton
delivered the opinion of the court.
The appellee, as the administrator of Samuel Mitchell, deceased, reported his estate to be insolvent, at the April term, 1841, of the probate court of Lafayette county, and thereupon, commissioners of insolvency were appointed. McMurray, for whom Reed is the trustee, a citizen of North Carolina, held .Mitchell’s writing obligatory, dated November 29th, 1836, payable on the 15th January following, for $8350; also his promissory note, dated 1st December, 1836, for $1700. These claims were presented to the commissioners of insolvency, who *407 reported against them. Thereupon, at the instance of McMur-ray, referees were appointed, according to the statute, to pass upon his claims. The referees made their report to the court, rejecting the claims; a motion was made to set aside the report; which, however, was overruled, and the report confirmed. This report was made, as it seems, without any evidence other than the claims themselves.. At a subsequent term of the court it was agreed by the attorneys for both parties, that the claims should be again referred for another report. Depositions were then taken, and submitted to the referees, who again rejected the claims, and, upon the confirmation of their report, an appeal was taken to this court.
The power of the counsel to make an agreement to set aside the first report made by the referees, at a term of the court subsequent to that at which it was returned, and to re-commit it to referees, has béen questioned in the argument here.
It does not appear that either of the clients ever objected to this order; and it appears affirmatively that both have acquiesced in it. Under the last order both parties proceeded to take depositions, and to procure the last report; it would seem too late now to make the objection upon an appeal taken from the order confirming the last report. It would appear like giving countenance to fraud, to permit either of them now to recede from the agreement. We need not now undertake to decide, whether such an agreement by counsel would be binding, without any subsequent recognition by the client.
The proceedings in the probate court under the statute, in regard to the settlement of claims against an insolvent estate by referees, seem to bear a strong resemblance to a reference to a master in chancery. The report of the referees is open to exceptions and objections; the court may reject or confirm it, and when confirmed, it is final, so far as the action of that court is concerned. But if an appeal be taken to this court, we do not regard the report of the referees, when ordered to be confirmed by the court, to be conclusive in such sense, as to fetter the action .of this tribunal. It is our province to decide *408 it, as the court below should have done: the law and the facts are both brought up for re-examination.
In this case, no errors of law are complained of; but only that the court and referees formed an erroneous conclusion from the facts.
There have been three reports made, all unfavorable to the claims, and all confirmed by the court below. The evidence, however, was only produced before the referees at their last sitting. After these repeated decisions against them, this court would very reluctantly disturb the judgment of the court below; and only when clearly satisfied that' it is necessary to the'attainment of the ends of justice. This cause certainly is not free from difficulty. The claims both bear date in 1836. In 1837, a witness proves, that the decedent settled a large' debt for the claimant, exceeding the aggregate amount of his claims. But in 1838, 1839, and 1840, we find the decedent making large payments upon the present notes; a circumstance not to be reconciled with the supposition that he had previously paid them. There is a correspondence in the record, which shows there had been large dealings between the parties, but it throws not much light upon this transaction. We forbear from much comment upon the testimony; a few remarks, however, will not be out of place. The debt settled by the decedent was a bank debt of McMurray and Mitchell, who were in partnership in some kind of trading. It was settled by the giving his individual note by Mitchell, in place of the previous partnership note. This would raise a presumption of indebtedness from McMurray to Mitchell for the amount. The debt was settled in June, 1837, and amounted then to near $11000. In a letter from Mississippi, where the partnership transactions appear to have taken place, to McMurray, in North Carolina, written by Mitchell in July, 1838, he states that.he had then collected for the firm of McMurray & Mitchell, $11,572, and that his expenses had been $307; and he speaks of several thousand dollars more as still due. Now, this sum was about sufficient to pay the bank debt, and as there is no evidence it was ever paid, or any part of it to McMurray, it might have been appropriated by *409 Mitchell in that way. And this may seem to explain the fact, that for some years afterwards, and up to a period near his death, Mitchell was making payments upon these notes. The whole letters written from 1838 to 1840, relative to the partnership affairs, recognize an unsettled state of accounts between them; and that the firm was in debt to McMurray, if the* debts due it should be collected. There is no evidence that all were collected. The whole matter rests in some degree of obscurity. In this state of painful uncertainty, McMurray producing clear proof of a debt once subsisting, and there being no proof that clearly shows it was ever paid, it is thought to be more subservient to the ends of justice to direct the report to be re-committed. But on the re-submission, the referees must be at liberty to form their own estimate of the testimony, since we cannot undertake to control them in that respect. ‘ Errors of law may be .corrected by us; the facts must at l^ast be determined either by the referees or by a jury. Indeed, this would seem to be a case peculiarly proper for an issue for a jury. See H. & H. 472.
The order of the probate court is reversed, the cause remanded, and report to be re-committed, unless upon proper application a jury be ordered.